NEELY v. WILMORE.

Opinion delivered June 19, 1916.

COUNTERCLAIM—BREACH OF TRUST BY AGENT—IMPROPER PAYMENT OF FUNDS OF PRINCIPAL AS BASIS FOR COUNTERCLAIM.—In an action by an agent against his principal for wages due, the principal may set

up by way of counterclaim, a loss sustained by him by reason of the improper payment by the plaintiff of funds of the principal to another employee.

Appeal from Phillips Circuit Court; *J. M. Jackson*, Judge; reversed.

*S. M. Neely*, of Memphis, and *Bevens & Mundt*, for appellants.

1. The court erred in excluding from the jury all evidence of plaintiff's fraud, unfaithfulness and dishonesty in discharging the duties connected with the agency; and in refusing to instruct the jury that if proven it was a defense to the suit. Where an agent is guilty of fraud, dishonesty or unfaithfulness in the transaction of the agency, such conduct is a bar to the recovery of wages or compensation by him. 96 Ark. 451.

2. The court erred in excluding from the jury all evidence in support of defendant's counter-claim and in refusing instruction thereon. Kirby's Digest, § 6099; 64 Ark. 221; 69 S. W. 821; 12 L. R. A. 321; 101 N. Y. 631; 34 Cyc. 682; 34 *Id.* 706; 58 Ark. 238; 76 *Id.* 18; 25 S. E. 783, etc.

3. Hence it was error to direct a verdict.

*Fink & Dinning* and *Andrews & Burke*, for appellee.

1. Plaintiff did not employ Harrison, it was no part of his duty to pay him nor to keep the books, nor Harrison's account; he was a relative of defendants and their employee before plaintiff took charge. He did not know what his salary was, nor what his contract was. Hence the drafts and all testimony as to wrongful acts of Harrison were properly excluded. He was an employee of defendants and plaintiff was not responsible for his acts. Even if the court assigned a wrong reason for its ruling, that is no reason for reversal if the ruling can be sustained on other grounds. 3 Cyc. 222.

2. The drafts are not brought into the record nor made part of the record. Nor is the refusal to allow the written testimony of Dr. Leonhart, nor the testimony

itself, nor anything to show prejudice.  39 L. R. A. 833; 45 Ark. 485; 46 *Id*. 482; 140 S. W. 7; 142 *Id*. 1151; 111 Ark. 562.

3.  The damage, if any, arising from the issuance of the drafts, did not arise out of the contract of employment nor connected with the subject of the action.  87 Ark. 168; 106 *Id*. 241, 247; Kirby's Digest, § § 6099, 6101; 120 Ark. 472; 57 Ark. 237, 241.  No prejudicial error was committed.

Smith, J.  Appellee sued for a sum of money alleged to be due him as wages as plantation manager on a farm owned by appellants for the years 1912, 1913 and 1914 under an express contract.  Appellants filed a counter-claim in which they alleged that appellee had wrongfully and without authority overpaid one R. E. Harrison for services as bookkeeper. The proof was that appellants themselves employed Harrison, who was their kinsman, and fixed his salary, and appellee testified that he did not know the amount of the salary.  It was shown, however, that the salary was paid with drafts signed by appellee payable to the order of Harrison  and drawn on Sternberg, Mallory & Company, of Memphis, Tennessee, and cashed at a bank at Friars Point, Mississippi, pursuant to an arrangement for appellee to thus procure money for plantation uses.  Appellants offered evidence in support of their counter-claim, whereupon appellee's counsel objected and stated to the court: "Your Honor, they allege that Mr. Wilmore has been negligent in his duties as manager,  and they are setting up a counter-claim in tort, as a counter-claim in a suit on a contract, and it is my idea that that can not be done.  They charge that he was guilty of negligence in the management of the affairs, and that is a tort, and we will, therefore, resist any testimony going to the jury showing or tending to show the character of any claims arising out of a tort committed by Mr. Wilmore.  This is a suit on contract and the counter-claim if considered  in this case should arise out of the contract sued on in this case. and

they come into court and bring suit on a tort, an action for a tort, and attempt to set same up as a counter-claim to this action on contract."

The court adopted this view and excluded the evidence, whereupon the appellants offered to prove that "appellee drew drafts signed by himself, payable to the order of R. E. Harrison, on the Sternberg, Mallory & Company, at various times and on various dates as alleged in the answer in this case, said drafts showing on their face that they were for the purpose of paying the salary of R. E. Harrison, and that by reason of said over-drafts drawn by this plaintiff R. E. Harrison overdrew his salary account in the sum of $1,938.00, and offer the drafts in evidence. We also offer to introduce in evidence other drafts of the same description showing the amount of $4,200 paid to Mr. Harrison, for which there was no accounting. We offer this evidence, first, for the purpose of showing that the plaintiff was unfaithful in the discharge of his duties connected with his agency, and, second, for the purpose of showing that by reason of such conduct on the part of the plaintiff the defendant suffered a loss in the figures just named, and this loss grew out of the same transaction upon which this suit is brought."

Exceptions were duly saved to the action of the court in refusing appellants permission to make this proof. Thereupon, there being no dispute as to the amount of salary due appellee, the court directed a verdict for that amount, and this appeal questions the correctness of that action.

Appellee argues that the action of the court was correct because he testified, and there was no contradiction of his evidence, that he did not know what the amount of salary due Harrison was and he could not, therefore, have known whether his salary account was overdrawn, and the appellants should not have paid, nor permitted to be paid, any drafts which would result in making the account over-drawn.

A verdict having been directed against appellants we must view the evidence in the light most favorable to them, and must therefore, assume that appellee exceeded his authority in this respect. And it can be no answer for appellee to say that he did not know the amount due. Unless he had this information he should not have drawn the drafts.

Appellee argues that inasmuch as the drafts have not been copied into the bill of exceptions the judgment must be affirmed. But we cannot agree with him in this contention. The form of the drafts in immaterial and no question was made on that account. They merely evidenced the extent or amount to which appellee had permitted Harrison to overdraw his account, and the court excluded this evidence on the ground that it was not a proper subject of a counter-claim, and the correctness of this view presents the controlling question in the case.

In the case of *Doss* v. *Long Prairie Levee District*, 96 Ark. 451, a suit was brought by the assignee of a certificate of indebtedness issued by the levee district, which answered and admitted the execution of the certificate but alleged that its agent to whom it was issued had been guilty of fraud in the transaction of his agency. It was there said:

"The rule is well settled, both by the text-writers and the adjudicated cases, that where the agent is guilty of fraud, dishonesty or unfaithfulness in the transaction of his agency, such conduct is a bar to the recovery by him of wages or compensation. (Citing cases)."

In that case, as in this, the point was made that the defendant sought to set off unliquidated damages flowing from a tort by way of counter-claim, but, while it was not expressly decided, the opinion shows the view of the court to have been that such damages were the subject of a counter-claim.

Our statute on the subject of counter-claim is as follows: Kirby's Digest Section 6099. "The counter-claim mentioned in this chapter must be a cause of action in

favor of the defendants, or some of them, against the plaintiffs, or some of them, arising out of the contract or transaction set forth in the complaint, as the foundation of the plaintiff's claim or connected with the subject of the action."

This section has frequently been before the court for construction, and one of the leading cases on the subject is that of *Dale* v. *Hall*, 64 Ark. 221. The syllabus in that case is as follows:

"Counter-claim—Connection with Subject of Action. —Where a tenant in common, having control of the renting of the premises held in common, is sued by his co-tenant for his share of the rents, he may counter-claim against the co-tenant damages sustained by him because the latter wrongfully induced lessees of such premises to leave before their leases expired, and thereby caused him to lose his share of the rents which would have accrued but for such interference." As illustrative of the causes of action which may be set up in a counter-claim see also, *Ramsey* v. *Capshaw*, 71 Ark. 408; *Daniel* v. *Gordy*, 84 Ark. 218; *Stevens Co.* v. *Whalen*, 95 Ark. 488; *Smith* v. *Price*, 102 Ark. 367; *Epstein* v. *Buckeye Cotton Oil Co.*, 106 Ark. 247; *Brunson* v. *Teague*, 123 Ark. 594.

Section 6099 of Kirby's Digest (which was section 5034 of Mansfield's Digest) was construed by the Court of Appeals of Indian Territory in the case of *Patterson* v. *Bradley*, 69 S. W. 821, the syllabus of that case being as follows:

"1. Under Mans. Dig., § 5034 (Ind. T. Ann. St. 1899, § 3239), providing that a counter-claim must be a cause of action in favor of the defendant against the plaintiff arising out of the contract or transaction set forth in the complaint, in an action to recover for threshing defendant's grain, his claim against plaintiff for damages for negligently setting fire to and burning other grain while doing such threshing may be set out in the answer as a counter-claim."

Appellants allege the loss they sustained grew out of appellee's unfaithful discharge of the contract on which he sues, and whether the loss thus sustained is considered as a tort or as a breach of the reciprocal and implied duties under the contract the cause of action arises out of transactions had under the contract sued on and are, therefore, the proper subject of counter-claim.

It follows, therefore, that the court erroneously excluded this evidence and, consequently, erred in directing a verdict, and the judgment of the court below must, therefore, be reversed.