CORDER v. NORSWORTHY.

4-4724

Opinion delivered October 4, 1937.

*G. W. Botts,* for appellants.

*George Pike,* for appellee.

GRIFFIN SMITH, C. J. S. E. Corder and his wife, Willie Corder, have appealed from a finding of the chancery court for Arkansas county that the indebtedness of S. E. Corder to appellee was $559.43, for which judgment was rendered.

In 1926 or 1927, appellee entered into a verbal contract to sell 4.25 acres of land in the town of St. Charles. Mrs. Corder testified that she bought the property, agreeing with appellee that the principal price of $1,500, without interest, should be paid by permitting appellee to take the rents from certain rice lands she and her husband owned, it having been estimated that more than six years would be required to complete the payments. Her husband was not present when she made the agreement with appellee, but she went home and told of the transaction. The deal was consummated in December, 1926.

Mrs. Corder further testified that the rice land "was turned over to Mr. Norsworthy to rent and collect rents like it was his own." She says that no papers were executed; that appellee claimed to be too busy. "He told me to come back, and I went back different times, and he always made excuses and did not have the papers ready. I don't know why he did not fix the papers." Witness also claimed there was an agreement that Norsworthy might collect certain dry land rents [as distinguished from irrigated rice farming] and in consideration of this arrangement Norsworthy would waive interest charges. When the contract for purchase of the town property was closed, no other indebtedness was due Norsworthy. Witness testified that, at the time the town property was bought, she and her husband had a substantial balance coming to them from the 1926 rice crop, they having been told by Norsworthy that this credit was sufficient to take care of a $500 payment. It was admitted by witness that in 1932 she and her husband owed appellee a supply account which showed a balance of $43.16, the obligation having been secured by chattel mortgage. This amount was paid to appellee by a Mrs. Whitmore, who had collected it on a rental charge. Witness says she directed Mrs. Whitmore not to make this payment to appellee, but that the instruction was disregarded.

S. E. Corder testified that his wife purchased the town property; that appellee promised to take the rice land and rent it and apply the proceeds on the debt; that T. L. Crabtree farmed the rice land in 1926, and appellee agreed to take the 1926 crop as the first payment, stating that the crop would be worth $500; that no interest was to be charged, and appellee was to pay taxes until the deed was made. Witness stated that the town property was occupied the latter part of February, 1927. He also testified that he later checked the rice mill records to ascertain the value of the 1926 crop, and it amounted to $495. No cash was paid on the purchase price of the town property, the rice check having stood for such. Witness testified there were no settlements or

discussions between the parties "until I got after him in 1929. I figured we were about even and he gave me this statement in 1929; it was $900 something. It was the only statement I ever got. Rents collected by Norsworthy in 1932 were against my will." The witness confirmed Mrs. Corder's statement that Mrs. Whitmore was directed not to pay Norsworthy the item of $43.16 heretofore referred to.

The record shows that in the fall of 1927 appellee sold to G. B. Dean approximately one acre of the town property, receiving $50 therefor. In 1930 he sold an acre to C. L. Whitmore, the consideration being $150. Appellants testified that they did not know of these sales, and did not approve them. Appellee just as positively testified that in each instance Mr. Corder was consulted, and that he readily agreed to the transactions. Appellants contend that the value of the land sold to Dean was $150, and that the Whitmore tract was worth $300, and demand credit for the aggregate of $450.

The full amount appellants testified appellee had collected, or should have collected, was $3,021.99, as follows: 1926 rice rent, $495; 1927, 750 bushels of sweet potatoes, $750; 1927, Jim Barker dry land rent, $150; 1927, Crabtree rice rent, $217.13; 1928, Jim Barker dry land rent, $95; by error in gasoline charge, $21.70; 1929, rice rent, $43.16; 1928, rice rent, prevented from farming by Norsworthy, $150; 1929, rice rent, not farmed, prevented by Norsworthy, $150; 1931, rice rent, not farmed, prevented by Norsworthy, $150; 1933, rice rent, not farmed, prevented by Norsworthy, $150; 1934, rice rent, not farmed, prevented by Norsworthy, $150; one acre sold to Whitmore, $300; one acre sold to Dean, $150.

Appellee testified that he sold the town property to S. E. Corder, and not to Willie Corder; that on October 20, 1926, he credited S. E. Corder with $330 on the Crabtree rice; that on November 29 he received four bales of cotton from Corder amounting to $234.65; that Corder owed an account for supplies, and after extending these credits of $564.65 against the Corder account, a credit of $77.29 was due, and this was paid by check. From

1927 to 1933, the Corders were indebted to appellee on open account, in addition to the land transaction. Instead of receiving 750 bushels of sweet potatoes from appellants in 1927, he actually received six bushels. He did not agree to buy a crop of sweet potatoes from appellants at $1 a bushel. An item of $43.02 appellants claimed to have paid in 1932 to discharge a chattel mortgage was not paid for that purpose, but was paid to apply on the town property contract. The records show the chattel mortgage was satisfied December 1, 1933. Appellee further testified that he did not, at any time, have charge of the renting of the farm lands. "The agreement between us was that these rents were to come to me until the property was paid for. That is about as short as I can make it. Appellants did not agree to turn the lands over to me to be managed or rented out for them, and I did not receive all of the rents collected by appellants. I did not at any time prevent them from renting any of their lands."

Following purchase by Whitmore of one acre of the town property under deed executed by appellee, Whitmore erected thereon a modern gin costing more than $8,000. On December 19, 1933, Willie Corder filed a circuit court action against Whitmore, seeking recovery of the one acre. The allegations were that she had purchased the property from Norsworthy; that she had not consented to the sale by Norsworthy, and that she had received no consideration. Norsworthy was made a party defendant in the suit. Judgment was rendered in favor of Whitmore.

The suit from which this appeal comes was filed December 13, 1935, by Norsworthy against S. E. Corder and Willie Corder. The plaintiff alleged (and testified) that the verbal contract of sale and purchase was made in February, 1927. The complaint alleged that no deed was to be executed until all of the installments had been met; that the last payment on the contract was $122, made on August 29, 1935, and that a balance of $1,124.67 was due. The prayer was for judgment in this sum, with

foreclosure of the vendor's lien, sale, etc. An itemized statement, duly verified, was attached to the complaint.

Appellants, in addition to their contention that the account has been overpaid, have interposed a plea of *res judicata*, contending that in the circuit court action, to which appellee was a party, Norsworthy prayed specifically for certain relief, "and all other relief to which he might be entitled."

The record contains more than 250 pages, and a great deal of testimony was taken. Although the chancellor did not make a detailed finding of facts, a refusal to allow interest charges of $559.43, as set out in appellee's statement, would account for a reduction of the claim from $1,124.67 to $565.24, and judgment was given for $559.43—a difference of $5.81. Appellants claim payments and request credits for $3,021.99.

It is indicated by the amount of the judgment that the chancellor allowed appellants' claim of $150 representing Jim Barker dry land rent for 1927; $217.13 for 1927 Crabtree rice land rental, and $150 and $43.16 for 1929 dry land rental, aggregating $560.29; also, that other items in the claim were rejected. To this the chancellor apparently added items taken from appellee's statement, as follows: Proceeds of sale of land to Whitmore, and Dean, $200, less abstract and survey charges of $36, or $164 net; $43.02 received in cash from Corder in 1932; and payments of $167 in 1935. The total of these three items is $374.02, or total credits of $835.31. This would show a balance of $664.69 due by appellants, or $105.26 more than the chancellor gave judgment for. It is obvious, therefore, that appellants were given additional credit, the nature of which was clear to the court at the time judgment was rendered, but which have not been analyzed in the abstracts of testimony in a manner admitting of their identification in the record. This is not important to a determination of this appeal for the reason that the discrepancy, if in fact it is such, is against the appellee, who has not cross-appealed.

To discuss all of the credit items urged by appellants and to amplify their demands by copying testimony ap-

plicable thereto would unduly extend this opinion. In view of the conflict of the testimony, the interest of the parties testifying, and the means available for verification, the result arrived at by the chancellor is not contrary to the weight of evidence.

The plea of *res judicata* may be disposed of by saying that in the circuit court action Willie Corder was plaintiff, claiming that Norsworthy had contracted exclusively with her, and the latter was brought into the proceedings as a party defendant. The present suit is by Norsworthy against Willie Corder and S. E. Corder. The parties being different, *res judicata* cannot be properly pleaded.

Another reason why this plea cannot be considered is that the judgment of the circuit court is not properly abstracted.

Affirmed.